# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ADRIAN Z.,<br><br>    Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>    Defendant. | Case No. 17-cv-4585<br><br>Judge Sharon Johnson Coleman |

## MEMDORANDUM OPINION AND ORDER

Before the Court is Adrian Z.'s motion to reverse the Commissioner of Social Security's decision to deny Adrian's request for disability insurance benefits. Adrian seeks reversal of the Administrative Law Judge's determination that he is not disabled and entitled to benefits. For the reasons stated herein, the Court affirms the agency's decision.

**Background**

Adrian was born in 1982 and was 30 years old at the onset date. Adrian filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI) on June 13, 2013, alleging disability beginning May 31, 2013. These claims were initially denied on July 14, 2014, and reconsideration was denied on April 24, 2015. Adrian subsequently requested a hearing, which was held on February 25, 2016, before ALJ Kevin Plunkett. Adrian was present and represented by Brianne Stricoff. Also present were Sara Gibson, an impartial vocational expert, and Marcus Ingram, Adrian's therapist. On April 5, 2016, Plunkett issued his decision denying Adrian's application. On April 14, 2017, the Appeals Council denied Adrian's request for review, rendering the ALJ's decision the final determination of the Commissioner. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Adrian filed the complaint for judicial review now before this Court.

**Legal Standard**

This Court will reverse the Commissioner's finding only if it is not supported by substantial evidence or is the result of a legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Although this Court reviews the record as a whole, it cannot "substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993).

In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). "The ALJ need not, however, provide a 'complete written evaluation of every piece of testimony and evidence.'" *Hanyes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005) (quoting *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995)). The ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004).

**Discussion**

A person is disabled under the Social Security Act if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382(c)(a)(3)(C)(I). The Social Security Administration has set forth a five-step sequential evaluation process for determining whether an individual is disabled. 20 C.F.R. 404.1520(a). This evaluation considers "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the

claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001); 20 C.F.R. 404.1520.

Adrian makes three arguments for reversal of the ALJ's determination that he was not disabled. First, Adrian argues that the ALJ's decision to give discounted weight to the testimony of Ingram and Dr. Valluripalli was not supported by substantial evidence. Second, Adrian contends that the ALJ's residual functional capacity assessment was not supported by substantial evidence. Third, Adrian contends that the ALJ's evaluation of his subjective symptoms was legally insufficient. The Court takes each argument in turn.

Adrian contends that the ALJ erred by failing to give controlling weight to Dr. Valluripalli and Ingram's testimony about Adrian's diagnoses and resulting limitations. A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if supported by the medical findings and consistent with substantial evidence in the record. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); 20 C.F.R. § 404.1527(d)(2). When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2010). Nonetheless, courts uphold "all but the most patently erroneous reasons for discounting a treating physician's assessment." *Dixon v. Massanari*, 270 F.3d 1171, 1177 (7th Cir. 2001).

Here, the ALJ had before him the opinions of three treating psychiatrists, Dr. Carreira, Dr. Puszkarski, and Dr. Valluripalli. Doctors Carreira and Puszkarski treated Adrian from May 2013 through March 2015, and consistently concluded that Adrian had only mild to moderate mental symptoms or functioning. Dr. Valluripalli first treated Adrian in September 2015 and appears to have seen him only a handful of times before submitting a one-page letter stating his opinions as to

3

Adrian's mental health. That letter, however, was not specific and appears to have drawn many of its conclusions from Adrian's medical history and self-reports rather than a course of diagnosis and treatment.

Adrian argues that the ALJ erred in giving little weight to Dr. Valluripalli's opinion that Adrian's mental disorders resulted from a childhood traumatic brain injury or subsequent seizures. Dr. Valluripalli, however, offered no medical evidence to support his speculative theory, and thus his opinion on this matter was not entitled to controlling weight. Neither does the record evidence that Adrian now cites lend significant support to Dr. Valluripalli's opinion. The record contains medical records from Lutheran General Hospital describing a 1993 or 1994 operation performed on Adrian after a motor vehicle accident (R. 444–445). However, that surgery record contains no references to a traumatic brain injury or seizures. The record also contains 1990 test results showing non-specific slowing in the front of Adrian's brain and learning disabilities, but those results contain no indication of causation. (R. 395).

Adrian further appears to contend that the ALJ should have considered Dr. Valluripalli's letter to the extent it identified conditions and symptoms which would logically impair functionality. The ALJ did consider Dr. Valluripalli's representations as to Adrian's mental health when establishing Adrian's mental health history, despite the fact that the symptoms described appear to have been predominantly established through self-report rather than established diagnostic methods. Dr. Valluripalli's letter failed to offer any opinion about Adrian's ability to work or propose any work-related restrictions, and the ALJ was therefore well within his rights to conclude that it did not identify specific functional limitations. In light of Dr. Valluripalli's failure to detail Adrian's functional limitations and failure to support his claim of a childhood TBI with corroborating medical findings, the ALJ did not err in denying those opinions controlling weight.

4

Adrian also asserts that the ALJ erred in only giving "some limited weight" to Ingram's lay opinions but giving greater weight to the treating psychiatrist's opinions based on Adrian's mental status examinations. Adrian, however, concedes that because Ingram is a therapist his opinions were not entitled to controlling weight, but instead were only required to be considered in the same manner as a medical opinion. 20 C.F.R. § 404.1527. Here, the record is clear that the ALJ credited some of Ingram's opinions, but placed greater weight on the evaluations and opinions reached by Adrian's treating psychiatrists through objective examinations. As Adrian himself notes, opinions of psychiatrists are generally entitled to greater weight than that of psychologists. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010).

Adrian also briefly asserts that it was error for the ALJ to give "some weight" to non-examining state agency doctors Jackson and Story in light of his treatment of Dr. Valluripalli and Ingram's testimony. This argument mischaracterizes the ALJ's opinion, which gave "some weight . . . but limited weight" to the non-examining state agency doctors' opinions because their reviews were conducted in 2014 and 2015 and therefore were not fully up to date. Adrian offers no reason that it was patently erroneous to give more weight to these doctors' review of the medical record, as compared to Dr. Valluripalli's unsupported letter and Ingram's observational opinions that were inconsistent with the medical assessments performed. The Court accordingly concludes that the ALJ's decision not to give substantial weight to Dr. Valluripalli and Ingram's testimony was supported by substantial evidence.

Adrian next contends that the ALJ's evaluation of his subjective symptoms was legally insufficient. Review of an ALJ's assessment of a claimant's subjective allegations is "extremely deferential." *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013). Credibility determinations supported by specific reasons based on the record will not be overturned unless they are patently wrong. *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015).

Adrian first takes issue with the ALJ's determination that his statements were "not entirely consistent with the evidence as a whole." Adrian asserts that this conclusion either indicates reliance on an incorrect legal standard or is too vague to facilitate review.

The ALJ's full determination was that:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the evidence as a whole for the reasons explained in this decision, but primarily because his subjectively reported symptoms are grossly disproportional to the objective findings in the medical record.

The ALJ subsequently set forth Adrian's medical and work history, identifying with specificity where it contradicted Adrian's subjective characterizations of his symptoms. The Court accordingly rejects the conclusory arguments that the ALJ improperly required Adrian's subjective statements to be entirely consistent with the evidence or failed to consider them with specificity. The Court similarly rejects Adrian's argument that the ALJ gave improper weight to the objective findings; although the law is clear that an ALJ cannot disbelieve a claimant's testimony solely because it is not supported by objective medical evidence, the ALJ here was explicit that the objective findings were the primary, but not the only, cause of his credibility determination. 20 C.F.R. § 404.1529.

Adrian attempts to assert, without any support, that his anger, depression, anxiety, cognitive deficits, and learning disorder are not objectively verifiable. Adrian alternatively points to a number of objective observations by his treating physicians that he claims support his alleged symptoms. With respect to his mental symptoms, Adrian notes that his treating sources observed that at various times he appeared "inconsistent with circumstances, and disheveled, including a full beard; tearful; distressed; depressed; low energy; guarded; agitated; irritable; anxious; restless; angry; aggressive; poor impulse control; excessive and pressured speech; constricted or expansive affect; delusional

mood; auditory hallucinations; memory deficits; decreased focus; difficulty on serial 7 testing; concrete interpretation; circumstantial thought processes; poor communication; fair to poor insight; and impaired judgment." One-off observations, however, do not equate to objectively established conditions; especially when, as here, they are drawn primarily from an individual's own subjective characterizations of his symptoms. Although the ALJ did not expressly address each of these notations, he did address Dr. Ingram's treatment notes as a whole, stating that they "merely reported the claimant's statements" and "do not support the therapist's opinions . . . with any markedly abnormal mental status examination findings."

Adrian similarly disputes the ALJ's determination that the objective evidence demonstrated a generally normal gait and that medication was generally effective. Adrian notes that at various points his physicians noted tenderness in his lumbosacral region and sacroiliac joints, paraspnals, erector spinae, and back; decreased range of motion; paraspinal muscle spasms; decreased deep tendon reflexes; a positive FABER test; a positive slump test; positive straight leg raise tests on the right, and a L5-S1 disc protrusion as evinced by a MRI. The ALJ, however, gave consideration to these reports and to Adrian's obesity, as well as Adrian's prior employment in 2014 and his statements indicating that he was remodeling his house and was able to drive at various points in time. Indeed, several inconsistencies, including Adrian's failure to disclose prior employment and failure to consistently seek treatment, raised questions as to the veracity of Adrian's subjective reports and justified the ALJ's resulting credibility determination.[1]

Adrian also contends that the ALJ's residual functional capacity assessment was not supported by substantial evidence. The ALJ found, in pertinent part, that Adrian

> has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) in that he can stand or

---

[1] Adrian argues that the ALJ should have considered that these discrepancies may have resulted from his previously noted memory deficits. If memory deficits caused Adrian to forget about his prior experience, that only serves to justify the ALJ's scrutiny of Adrian's testimony.

7

> walk in combination for a total of about six (6) hours, sit for a total
> of about six (6) hours, in an eight-hour workday, with normal breaks
> and he can lift/carry fifty (50) pounds occasionally and twenty-five
> (25) pounds frequently, except: the claimant can occasionally climb
> ladders, ropes, or scaffolds, and stoop; the claimant can understand,
> remember, and carry out simple, routine, repetitive tasks, but not at a
> production pace, such as assembly type work; the claimant is limited
> to simple work-related decisions; the claimant can frequently respond
> appropriately to supervisors, but can occasionally respond
> appropriately to coworkers and the public.

Adrian first disputes the ALJ's assessment of his mental capacity. Adrian asserts that the ALJ's finding that he could only respond appropriately to coworkers and the public "occasionally" and only respond appropriately to supervisors "frequently" would preclude his employment, because even occasional inappropriate interactions with either of those constituencies would result in his termination, an outcome that Adrian contends is consistent with his employment history. This argument, although based on the plain language of the ALJ's stated holding, overlooks the broader context of the ALJ's opinion, which makes clear that the ALJ did not believe that Adrian would behave inappropriately at other times but instead that Adrian had reduced social contact demands and could behave appropriately if he was in "frequent" contact with supervisors and had only "occasional" contact with coworkers and the public. Adrian has failed to establish that this determination was inconsistent with his prior employment record or with the record evidence in this case.

Adrian further argues that the ALJ erred by not incorporating the state psychologists' restrictions limiting him to tasks requiring two to four steps and recognizing that he could manage only limited demanding social interactions with others. Although the government attempts to characterize the "two to four step requirement" as mere elaboration on the meaning of "simple and routine vocational activities," it is clear from context that it defines Adrian's contemplated restrictions. Although the ALJ did not address this specific requirement, however, the ALJ generally considered testimony related to Adrian's limitation in this respect, concluding that Adrian was

8

limited to "simple, routine, repetitive tasks."  The Court is not convinced that this conclusion is inconsistent with the testimony in question.  As previously noted, the ALJ acknowledged the Adrian's limitation on demanding social interactions, which is why he limited Adrian to roles requiring occasional public contact.  The ALJ considered Adrian's mental and physical limitations, both individually and in combination, and the Court finds no basis to hold that the ALJ's conclusion was patently wrong.

**Conclusion**

For the foregoing reasons, the Court affirms the agency's decision.

IT IS SO ORDERED.

Date: 8/2/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge